Our fourth case for today is a combined case Duane Hekter and Gianna Hoot against Saul and we will hear from Mr. Aguilar first. May it please the court, Daniel Aguilar for the Commissioner of Social Security. Plaintiffs never raised an appointments cost challenge at any point during their administrative proceedings. Before you get too wound up about this Mr. Aguilar I need to ask you in light of the Supreme Court's grant of certiorari on what appears to be the same issue whether you think there is going to be anything left over in this case that doesn't get resolved by the Supreme Court decision. If so what is it and I suppose what whether the Commissioner would have any objection to this court simply holding the case awaiting word from the Supreme Court. I just to start off I think it's entirely within the court's discretion to hold the case pending a decision by the Supreme Court on the merits. The question in those cases Davis versus Saul and Carr versus Saul is the same question presented here. A decision on the merits in that case is almost certainly you know obviously the Supreme Court can hold what it wants to hold but it's almost certainly gonna control the outcome of the case here. If the Supreme Court agrees with our position the result would be a remand to the district court to make a determination on the disability claims in the first instance because the district courts here didn't do that. If the Supreme Court sides with the third and sixth circuits then it would be an affirmance and it would go back to the Social Security Administration for further administrative proceedings. I know that this just happened this morning so I haven't had an opportunity to follow anything with the court about it but the 11th Circuit is considering cases that raise the same question and it just stayed those pending merits decision by the Supreme Court so that's certainly within the court's discretion. So here's what I wondered about again the comparison of the cases. These cases the ones before us right now appear to have been going through the process at the agency during a time when the agency itself had instructed first the ALJs and of course the Appeals Council not to reach Appointments Clause issues so the so this message first goes out after the plaintiff's ALJ hearings but before the ALJs issued a decision. So had the message been the opposite? Had the agency sent out a message saying these Appointments Clause issues are rattling around the country and we're just reminding you that you have to decide them. Had that message gone out these plaintiffs would have had an opportunity even before the ALJ decided to go ahead and raise an Appointments Clause issue but it was the opposite message. It's don't do this, don't do this and this all doesn't get sorted out until after they're through the Appeals Council process. So I wasn't sure if the sequence of time is the same in Davis and Carr as that but it was I was curious. I can't I can't recall at the moment the Davis and Carr involved several consolidated cases. If I'm remembering correctly the emergency messages may have been active at different portions of those administrative proceedings I'm not sure. At least here though just to further clarify both Hector and Hoot had their ALJ hearings before any of the emergency messages and I believe Hoot's Appeals Council decision was rendered after the last version of the emergency message which was if anybody raises an Appointments Clause claim to the ALJ we're going to provide relief based on the date of the ALJ decision and and whether or not that was before or after appointment. I'm not sure if that's accurate I mean we have it's only after both plaintiffs requests for review were denied by the Appeals Council that the agency publishes the new policy saying yes we're going to address these Appointments Clause issues which anyway down the line that may become important I think you know should we hold the case we would of course invite input from both parties to comment in light of whatever Davis and Carr hold so you'll have a chance. Sorry I misspoke it was it was Hector who had the Appeals Council decision in January 2019 and so that was after the revised emergency message which was in August of 2018 but just to just to make clear right the fact that the agency said at one point you know we're not going to hear these claims and then at another point said actually we are going to provide relief we're going to appoint all these ALJs and we're going to allow claims to be heard on the merits here and provide relief those to show that this wasn't futile right the agency was open to persuasion and in fact did act in a way to grant everybody relief so just to the extent that there's a claim of futility here I think that's you know undercut by the fact that the agency has provided relief in these instances and again if the court wants to hold the case it can but I think if the court wants to decide the case you know under this court's decisions in Johnson and I think that this is a fairly straightforward case right Brewer says that if you don't raise a claim before the ALJ it's forfeited and Johnson says we're going to abrogate Brewer and other cases in part if you don't raise a claim to the Appeals Council but then cites Brewer itself to reiterate the proposition that claims not raised before the ALJ are forfeited and that's what we have here I don't think that there's any difference whether it's a different administrative structure from the one that the Securities Exchange Commission uses which was addressed in Lucia yes it's it's it's non-adversarial I think that makes a difference in two ways right first is that you don't need to completely raise every claim at every stage through the administrative procedure that's what the Supreme Court in this court explained in in Simpson Johnson because the Social Security Administration would drown if your applicants in every case thought on pain of forfeiture we've got to throw in the kitchen sink but it's exactly that kind of consideration I think which is why that is the requirement to exhaust all issues does exist at some level during the administrative proceeding right because otherwise the rule is anyone who's disappointed with their SSA decision can raise any legal claim for the first time in district court and that the agency's never had an opportunity to consider it or as here had an opportunity to provide direct relief appoint the ALJ's and it's potentially subjecting tens of thousands if not hundreds of thousands of decisions to being overturned on the basis of an objection that agency never considered so I think how many decisions in this particular situation given the passage of time would be affected again I'm just sort of asking you to speculate since it's before the Supreme Court right I don't I don't have direct data what I do have is the numbers of the general cases that we've cited I agree over the passage of time this has gone down considerably particularly because the district courts across the country the vast majority of them were correctly applying the rule of forfeiture saying you didn't raise this so we're not going to consider it so the cases have definitely winnowed but I would be concerned that a categorical rule which I believe is what plaintiffs are asking for that you don't need to exhaust all issues it's this potentially isn't going to be a one-time issue we know of cases and I can just relay this anecdotally in the 8th Circuit where people want to challenge the method of appointment saying that it was improper there's a 4th Circuit case where the plaintiffs counsel made the point in district court that we may be the appointments proper but maybe the removal protections for the ALJ's are not so maybe we'll raise that too so just saying that in this particular instance there won't be you know potentially it's hundreds of claims affected and we don't think that that's particularly significant but the rule would stay true for cases in the future and that is exactly the kind of concern that Ellie Tucker warned against. Unless the Commissioner passed a regulation of course we have the interesting situation where there's no law or regulation that requires exhaustion. And I think a statute of regulation certainly makes it an easier case in other contexts but the background rule. Well I'm just saying the Commissioner could pass a regulation couldn't he? Potentially but then you would have to further work out how that would apply if it would apply retroactively how many other cases can be caught up in it you're right the Commissioner can pass a regulation but I think what the Commissioner has done is you know after Sims was decided courts of appeals around the country including this court in Johnson beforehand and the 1st Circuit and Mills vs. Apple afterwards explained the background rule of forfeiture still applies because a contrary rule would wreak havoc on the administrative scheme and that's obviously not what rule should be imposed. Okay. Thank you. Mr. Meyer. Thank you. May it please the Court. Joseph Meyer for Appellees. The government's argument here rests on the notion that issue exhaustion is a background common law requirement applicable in all administrative proceedings and to all issues. But that's impossible to square with the Supreme Court's decisions in Sims v. Appell and McCarthy v. Madigan. As Judge Wood noted in Sims the court explained there were no statute or regulation that requires issue exhaustion. Courts should step in and impose such an exhaustion requirement only where the administrative proceedings at issue are analogous to adversarial litigation. The government concedes here that no statute or regulation requires issue exhaustion and the SSA proceedings are not adversarial. So under Sims there's no basis to require issue exhaustion. But your honors even if the government were right that issue exhaustion is generally required it would not be required here. In McCarthy v. Madigan the Supreme Court explained that where the question of whether to impose an exhaustion requirement for a particular kind of claim is a matter of judicial discretion that hinges not only on the nature of the administrative proceedings but also on the nature of the particular claim at issue. And the appointments caused challenges here are exactly the kind of issue for which it makes no sense to require exhaustion. And that's so for three main reasons. First, the issue is not one within the agency's expertise. It's instead the kind of question that courts are well equipped to answer. Second, even if the issue had been raised with the agency, the agency would not have afforded relief. Now the government argues that raising the claim would have alerted the agency to the issue and might have prompted the Commissioner to appoint the ALJs sooner than actually occurred. But as this court explained in Health Equity v. Sullivan, the standard for futility here is whether there was a reasonable prospect of relief. And there was no reasonable prospect here. In fact, the government's response is exactly what the Supreme Court rejected in Matthews v. Eldridge in the SSA context because it was quote, unrealistic. And as Judge Wood noted, the theory is particularly implausible here because we know from the agency's emergency messages to its ALJs that the agency was fully aware of the appointments issue for at least six months since January of 2018 and still didn't take corrective action. So the agency's lack of awareness clearly was not the reason for the agency's lack of action. And finally, the government suggests that not requiring exhaustion would lead to a flood of remands and backlog to the system. Although I would note that we're talking only about a few hundred remands here, which the government just acknowledged is not particularly significant. It's in fact a drop in the bucket compared to the hundreds of thousands, almost three-quarters of a million cases that the SSA's ALJs hear each year. And the government ignores, as Judge Wood also noted, that requiring exhaustion here could undermine agency efficiency by incentivizing things to raise all manner of constitutional objections in what are supposed to be accessible, informal, and speedy hearings. So there just are no good reasons to require exhaustion here, and several good reasons not to. I'm happy to answer any questions. I would also just like to respond to a couple of points the government just made. First of all, in terms of the particular timing of Mr. Hector's case here, I believe the government is conflating the third emergency message, which was issued in August of 2018, with the agency policy issued in March of 2019 that said the agency would afford new hearings to claimants who raised importance-plus challenges either before the ALJ or the Appeals Council. It's that latter policy from March 2019, SSR 19-1P, in which the agency announced that it would grant remands to those claims, and that occurred, as Judge Wood correctly noted, after both claimants' hearings. So both claimants, including Mr. Hector, filed their complaints in the district court. So both claimants here were unable to take advantage of that policy. As for Brewer and Johnson, the cases out of this court that the government notes, those cases don't control this case for several reasons. First, their reasoning can't survive Sims. Brewer's reasoning can't survive Sims because it required issuance of shame before the Appeals Council, as well as before the ALJ. And in fact, the only case cited in the relevant portion of Brewer is a case called Papp and Dickey-Sullivan, which involved only issuance of shame before the Appeals Council. The sentence that the government relies on from Johnson is dicta. Moreover, after Sims, in Peckle v. Mocenari, this court made clear that whether issue exhaustion before SSA ALJs is an open question in the circuit. And in any event, neither Brewer nor Johnson involved structural constitutional issues like the Appointments Clause challenge. So even if those cases were good law as to issue exhaustion generally before SSA, they would not be good law. They would not control this case because of the particular features of the Appointments Clause challenge that weigh against the exhaustion here. Again, the issue is not within the agency's expertise. There was no reasonable prospect of relief. These are structural constitutional claims. That's a final point I'd like to make here. The fact that the Appointments Clause issue is a structural constitutional claim doesn't mean that issue exhaustion is automatically not required, but it certainly notates in that direction. The Supreme Court recently explained that principle in Wellness International Network v. Sharif, and it's why the court in Fraytag said that Appointments Clause objections fall, quote, in the category of non-jurisdictional structural constitutional objections that can be considered on appeal whether or not the law will depend on them. Although I have any questions, I'd be happy to address them now. I don't think so. I think that will be enough for now. And Mr. Aguilar, you have a minute if you have anything further to say, but we will notify the parties if we decide to hold this case for the Supreme Court decisions. All right. Yes, Your Honor. Just a quick point on futility. It's just the agency granted relief here. It's hard to say that the claim was futile when the agency goes ahead afterwards and then says that we are going to grant relief and appoint these ALJs. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement as described.